UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALAIN ROBERT, Individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HUNTINGTON CRESCENT CLUB,<br><br>Defendant. | ECF CASE<br><br>No.: _____<br><br><br>CLASS AND COLLECTIVE<br>ACTION COMPLAINT<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Alain Robert, on behalf of himself and all others similarly situated, hereby alleges through his attorneys, Lipsky Lowe LLP, as against Defendant Huntington Crescent Club as follows:

### NATURE OF THE ACTION

1.     Huntington Crescent Club is a private golf club.

2.     Plaintiff Robert worked for Huntington Crescent Club as a golf caddy.

3.     Plaintiff Robert asserts, on his behalf and other similarly situated individuals, that Huntington Crescent Club willfully violated the New York Labor Law by (i) failing to pay the minimum wage, (ii) failing to pay overtime premium pay, and (iii) failing to pay the spread-of-hours pay.

4.     Plaintiff Robert asserts, on his behalf and other similarly situated individuals, that Huntington Crescent Club willfully violated the Fair Labor Standards Act by (i) failing to pay the minimum wage and (ii) failing to pay overtime premium pay.

## JURISDICTION, VENUE & LEAVE TO AMEND

5.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 1337 and 1343, supplemental jurisdiction over the Labor Law claims under 28 U.S.C. § 1367, and jurisdiction over the FLSA claims under 29 U.S.C. § 216(b).

6.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2).

7.      This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

8.      Plaintiff Robert was and is, at all relevant times, an adult individual residing in the State of New York.

9.      Huntington Crescent Club is, upon information and belief, a domestic not-for-profit corporation that is organized under New York law and is authorized to do business in the State of New York. Its principal place of business is at 15 Washington Drive, Huntington, New York 11743.

10.      Huntington Crescent Club, at all relevant times, employed Plaintiff Robert and the Class and Collective Action Members (as defined below).

11.      Upon information and belief, Huntington Crescent Club is an enterprise engaged in commerce or in the production of goods for commerce. Huntington Crescent Club is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000. These goods and services include computers, glassware, and golf shirts.

<u>STATEMENT OF FACTS</u>

<u>Background</u>[1]

12.     Huntington Crescent Club is a private golf club in Huntington, New York.

13.     Huntington Crescent Club is a private club that requires a one-time initiation fee and annual dues.

14.     Huntington Crescent Club has about 400 members.

15.     Huntington Crescent Club employs Golf Caddies during the golf season: March to December, weather dependent.

16.     Huntington Crescent Club employs approximately 50 Golf Caddies at any one time.

17.     Huntington Crescent Club requires its Golf Caddies to wear the same uniform: White shirt, khaki pants, plus a green bib and hat with the Club's insignia. The Club provides the bib and hat.

18.     Golf Caddies are not free from control or direction over their performance.

19.     The Golf Caddies' work is squarely within, intertwined with and integral with the usual course of business and services that Huntington Crescent Club offers: golf.

20.     Golf Caddies are an intricate part of the experience of playing a round of golf at Huntington Crescent Club, with most golfers using caddies.

21.     Between 6:30 a.m. and 2:00 p.m., Huntington Crescent Club requires golfers to use its Golf Caddies.

22.     Huntington Crescent Club's Golf Caddies often work exclusively at the Club for multiple continuous years during the golf season.

---

[1] The headers are only for organizational purposes.

23.     Golf Caddies must be on Huntington Crescent Club property for the Caddy Master to pair them with a golfer.

24.     Huntington Crescent Club, at all relevant times, employs an individual in the "Caddy Master" position.

25.     Huntington Crescent Club's Caddy Master has numerous responsibilities concerning the Club's Golf Caddies, including pairing them with a golfer, supervising them, hiring and firing them, interviewing them, scheduling them, determining whether they will work on a particular day, disciplining them, setting the time of day by when they must report to the Club, telling them when they are done working for the day, discussing with Golf Caddies when a member complains about them, assigning experienced caddies to train newer caddies, and overseeing the training of new caddies.

26.     The Golf Caddies are not permitted to refuse a loop when paired with a golfer by the Caddy Master.

27.     The Caddy Master has fired Golf Caddies for various reasons, including for poor attitude.

28.     The Caddy Master will regularly drive a golf cart around the course to make sure the pace of play is appropriate (i.e., that golfers are not taking too long to play a round of golf) and to monitor the Golf Caddies.

29.     Most golfers do not know what Golf Caddy will be assigned to them until the Caddy Master assigns them.

30.     If a Golf Caddy cannot, for whatever reason, do the loop after being assigned to a golfer, it is the Caddy Master, not the Golf Caddy, who finds a replacement.

31.    Huntington Crescent Club has a caddy appreciation day when the Club allows the Golf Caddies to play a round of golf and the Club provides them a meal.

32.    New caddies at Huntington Crescent Club must first receive training and are trained by other Huntington Crescent Club caddies.

<u>Duties</u>

33.    Golf Caddies' duties involve carrying the golf bag or golf clubs for one or two golfers (doing a "loop").

34.    In addition to carrying the golfers' golf bags, Golf Caddies are required to find, identify and retrieve golfers' golf balls, clean the golfers' clubs and balls, correct divots on the golf course, rake sand traps after use, remove the flag from the hole on the putting green, and provide the golfers, when asked, with suggestions on what club to use and information on the course.

35.    The Golf Caddies perform all of their duties on Huntington Crescent Club property.

<u>Hours and Days Worked</u>

36.    When Huntington Crescent Club's Golf Caddies arrive at the Club, they are required to check in with the Caddy Master so the Caddy Master knows they are available to be assigned to a golfer and Caddies sign in a book.

37.    Golf Caddies typically arrive at the Club around 5:30 a.m.

38.    Golf Caddies typically stop working at the Club between 4:00 p.m. and 8:00 p.m., depending on when it gets dark.

39.     The majority of Huntington Crescent Club's Golf Caddies work 6 days a week, Tuesday to Sunday. Some Caddies will also work Monday if there is an outing at the Club (e.g., a company has rented out the course).

40.     Golf Caddies typically work more hours as the weather warms up and there is more daylight.

41.     Golf Caddies typically work between 40 and 54 hours a week.

42.     A round of golf at Huntington Crescent Club is typically between 4 and 4.5 hours.

43.     Golf Caddies will, typically, caddy 1 or 2 rounds each day.

44.     The Caddy Master decides how many rounds of golf a Golf Caddy will work in any given day.

45.     The Caddy Master possesses and exercises meaningful discretion in rewarding and punishing Golf Caddies.

46.     The Caddy Master claims to reward Golf Caddies who arrive early by quickly pairing them with a golfer in the morning and subsequently pairing them with another golfer later in the day.

47.     Golf Caddies who take early morning loops are much more likely to be assigned an afternoon round by the Caddy Master, which results in the Caddies receiving more compensation.[2]

48.     The Caddy Master often penalizes Golf Caddies who refuse loops or miss their tee time by firing them or not assigning them a loop that day.

---

[2] In using the term "compensation," Plaintiff Robert does not concede the money the Class and Collective Action Members and they receive from the golfers constitutes compensation or remuneration from the Club. The term is used solely for ease of reference.

Compensation and Labor Law Notices

49.     Huntington Crescent Club does not pay its Golf Caddies any compensation.

50.     Huntington Crescent Club does not pay its Golf Caddies any hourly rate, any salary, any piece rate or any other form of compensation.

51.     When the Golf Caddies work more than 40 hours in a week, Huntington Crescent Club does not pay them overtime premium pay: 1.5 times their hourly rate.

52.     The only compensation that the Golf Caddies receive comes directly from the golfers.

53.     Golf Caddies are typically assigned three or four golfers per loop.

54.     Golfers pay the Golf Caddies a fee per each golf bag they carry: a "bag fee."

55.     Huntington Crescent Club recommends a bag fee of $80 per golf bag for members to compensate senior caddies, and $60 per golf bag for junior caddies. However, golfers retain the discretion to pay golf caddies any amount they prefer, allowing them to pay less or more than $60 per bag.

56.     Golf Caddies have no input or ability to change the fee per bag.

57.     Golf Caddies are not permitted to negotiate the bag fee.

58.     Huntington Crescent Club's Golf Caddies keep 100% of the bag fee.

59.     Huntington Crescent Club's Golf Caddies are under no obligation to share any of the bag fees with the Club.

60.     Tipping Golf Caddies, above and beyond the bag fee, is at the golfers' discretion, with golfers tipping the Golf Caddies various amounts, depending on their satisfaction or dissatisfaction with the Caddies' services.

61.     Golfers do not always tip the Golf Caddies above and beyond the bag fee.

62.     The bag fee and additional tips are Golf Caddies' sole compensation.

63.     Huntington Crescent Club does not pay Golf Caddies for the time they spend waiting for the Caddy Master to assign them a golfer.

64.     Huntington Crescent Club does not pay Golf Caddies spread-of-hours pay: an extra hour of pay at the minimum wage when they work more than 10 hours.

65.     Huntington Crescent Club never notified, verbally or in writing, it considers its Golf Caddies to be tipped employees and that it was claiming a tip credit against the minimum wage.

66.     No agreement exists between Huntington Crescent Club and its Golf Caddies that the bag fees or additional tips would count towards Huntington Crescent Club's obligation to pay them a minimum wage and overtime.

67.     Huntington Crescent Club does not keep records of how much in bag fees are paid to its Golf Caddies.

68.     Huntington Crescent Club does not track which Golf Caddies are paid bag fees and any additional tips.

69.     Huntington Crescent Club does not invoice the golfers for the bag fees.

70.     Huntington Crescent Club does not keep accurate records of the number of loops its Golf Caddies work in a day or a week.

71.     Huntington Crescent Club does not collect and distribute the bag fees to its Golf Caddies.

72.     Huntington Crescent Club takes no steps to ensure that the golfers pay its Golf Caddies either the bag fee or tips.

73.     Huntington Crescent Club does not keep records of when its Golf Caddies start and stop working on each day.

74.     Huntington Crescent Club does not keep accurate records of the number of loops its Golf Caddies work in a day.

75.     Huntington Crescent Club does not, upon information and belief, include the bag fees in its gross receipts.

76.     Huntington Crescent Club has operated since 1884, during which time it has employed hundreds of individuals in various positions and paid them the minimum wage and overtime.

77.     Huntington Crescent Club's employment history shows it is aware of the FLSA and Labor Law's requirements to pay its employees the minimum wage and overtime, including that it must pay its employees when they are working, even when they are waiting to be given work to do.

78.     Huntington Crescent Club, upon information and belief, took no steps to determine whether it was complying with the FLSA or Labor Law by paying its golf caddies nothing and that its caddies' sole compensation was coming from the golfers.

79.     Huntington Crescent Club, upon information and belief, knowingly disregarded the FLSA and Labor Law's requirements to pay its golf caddies the minimum wage and overtime because, in part, it believed its caddies would not take any

legal action about not getting paid the minimum wage or overtime since the caddies would not want to risk being blacklisted at this or any other club by complaining.

80.    Huntington Crescent Club knowingly disregarded the FLSA and Labor Law's requirements as to its golf caddies because, unlike the rest of its employees, golfers directly pay the caddies.

81.    Plaintiff Robert heard numerous caddies complain to the Caddy Master about the Club not paying caddies anything when they were at the Club all day and did not go out on a loop. These caddies include Mark Stevens, Stanley, Kevin, Curtis, Joe, Colin, Anthony, Chris, Aquiles, Armando, Eugene and Earl (last names unknown). The Caddy Master would, in response, to some of those complaints threaten them by stating he will not pair them with a golfer if they continue to complain.

82.    Huntington Crescent Club did not change its compensation policies after its caddies complained about not getting paid for when they were at the Club but did not go out on a loop.

83.    Huntington Crescent Club, upon information and belief, took no steps to confirm if it was complying with the FLSA by not paying the caddies anything for the days they did not go out on a loop.

84.    Huntington Crescent Club was aware of its requirement to pay its Golf Caddies the minimum wage and overtime premium pay.

85.    Huntington Crescent Club, upon information and belief, structured its unlawful Golf Caddy compensation policy with the clear intent of minimizing its labor costs, versus complying with the FLSA and Labor Law.

86.     Huntington Crescent Club knowingly disregarded and evaded its statutory recordkeeping requirements by not tracking the hours its Golf Caddies worked with the intent of impeding the Golf Caddies' ability to determine their hours worked and thereby wages owed.

87.     Huntington Crescent Club knowingly misclassified its Golf Caddies as independent contractors when they should have been classified as its employees and did so with the intent of covering up its statutory violations and minimizing its labor costs.

Plaintiff Robert's Hours Worked and Compensation

88.     Huntington Crescent Club employed Plaintiff Robert as a Golf Caddy from April 10, 2004 to October 1, 2024.

89.     During the golf season at Huntington Crescent Club, Plaintiff Robert normally worked Tuesdays, Wednesdays, Thursdays, Fridays, and Sundays, and would sometimes work on Mondays if there was a golf outing.

90.     During each golf season at Huntington Crescent Club, Plaintiff Robert normally arrived at the Club at 7:00 a.m.

91.     During each golf season at Huntington Crescent Club, Plaintiff Robert normally left at the Club by 7:00 p.m., sometimes later depending on whether it was light enough to still golf.

92.     During each week of each golf season, Plaintiff Robert worked approximately 60 hours.

93.     Huntington Crescent Club did not pay Plaintiff Robert any compensation during his employment with the Club, not an hourly rate, salary or any other form of compensation.

94.     The sole compensation Plaintiff Robert received during his employment with Huntington Crescent Club came from the golfers: the bag fees and tips above and beyond the bag fees.

95.     Huntington Crescent Club did not pay Plaintiff Robert the statutory minimum wage.

96.     Huntington Crescent Club did not pay Plaintiff Robert overtime premium pay.

97.     Huntington Crescent Club did not pay Plaintiff Robert spread-of-hours pay.

98.     Plaintiff Robert is subject to the same policies, procedures, control and oversight that other Huntington Crescent Club Golf Caddies were subjected to.

99.     Plaintiff Robert knows from personal conversations and observations that he performed the same duties as other Golf Caddies, worked approximately the same hours, was compensated the same way and was subject to the same policies and procedures as them.

Retaliation

100.     Two years ago, at the beginning of the 2022 golf season, Huntington Crescent Club required caddies to sign a licensing agreement.

101.     The licensing agreement's terms stated that each Huntington Crescent Club caddy was an independent contractor able to determine their rates of labor and that the parties agreed to arbitrate their claims and waived their right to file a class action.

102.     Upon information and belief, Huntington Crescent Club circulated the agreement at the start of the season to capitalize on the caddies' urgent need for

employment, reducing the likelihood that they would resist signing due to their immediate need for income as the golf season began.

103.   Upon information and belief, Huntington Crescent Club exploited its unequal bargaining power over the golf caddies by preventing them from having a meaningful opportunity to negotiate the licensing agreement, knowing that the caddies lacked the resources or ability to afford legal representation to fully understand the terms of the agreement.

104.   Huntington Crescent Club fraudulently induced its Golf Caddies to sign the licensing agreement by knowingly misrepresenting to them that they would be able to negotiate the bag fee when the Club knew that to be false when presenting them the licensing agreement.

105.   Huntington Crescent Club failed to perform its obligations under the licensing agreement by not allowing its Golf Caddies to negotiate the bag fees with golfers.

106.   Huntington Crescent Club has not and does not allow its Golf Caddies to negotiate the bag fees with golfers.

107.   When entering into the licensing agreement, Huntington Crescent Club never intended to be bound by its terms because it never intended to allow the Golf Caddies to negotiate the bag fees with golfers.

108.   The licensing agreement, including all of its terms, is void *ab initio.*

109.   Although Plaintiff Robert signed the licensing agreement at the start of the 2022 season, he did not retain a copy for his personal records because Huntington Crescent Club refused to provide one upon Plaintiff Robert's request. Upon information

and belief, no caddy received a copy of their signed agreement, as Huntington Crescent Club has consistently declined to furnish caddies with copies of their executed agreements.

110.    During the 2024 golf season, Plaintiff Robert raised concerns with Huntington Crescent Club regarding the club's failure to adhere to the terms of the 2022 licensing agreement. Specifically, he objected to being unable to set his own bag fee rate with golfers, which was a direct violation of the agreement's terms.

111.    In addition to raising concerns about the licensing agreement, Plaintiff Robert also complained about being required to perform over an hour of unpaid labor before the Club's special events. Specifically, Huntington Crescent Club insisted that caddies arrive over an hour early on special event days, but refused to compensate caddies for their work during that time.

112.    As a result of the Club's refusal to compensate caddies for arriving over an hour early, Plaintiff Robert chose not to show up early when working special events. When the Club became aware of his tardiness, he was warned that if he continued to arrive late as a protest against the Club's treatment of caddies, he would face termination.

113.    Shortly after, Patrick McCarthy, a golf professional at Huntington Crescent Club, was instructed to terminate Plaintiff Robert due to his behavior. However, when he pulled Plaintiff Robert aside to inform him of the directive, McCarthy expressed that he wanted to give Robert another chance instead of proceeding with the termination.

114.    Following this conversation, Plaintiff Robert once again deliberately did not arrive over an hour early for a special event, citing ongoing disputes over compensation under the 2022 licensing agreement and for special events. Upon his

arrival, he was informed that he had been terminated and was no longer part of Huntington Crescent Club's caddy program. Furthermore, when terminated, Plaintiff Robert was told that if he did not leave the premises immediately, he would be considered trespassing, and the Club would contact the authorities.

<u>CLASS ACTION ALLEGATIONS</u>

115.    Plaintiff Robert assert these allegations and claims on his own and on behalf of a class of persons under Fed. R. Civ P. 23:

> All persons who work or have worked as Golf Caddies at Huntington Crescent Club at any time between December 11, 2018 and the entry of judgment in this case (the "Class Members").

116.    The Class Members identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within Huntington Crescent Club's sole control, upon information and belief, more than 200 Class Members exist.

117.    Plaintiff Robert's claims are typical of the Class Members', and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in court against a corporate defendant.

118.    Huntington Crescent Club has acted or refused to act on grounds generally applicable to the Class Members, making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class Members.

119.    Plaintiff Robert is committed to pursuing this action and has retained competent counsel experienced in employment law, wage and hour law, and class action litigation.

120.    Plaintiff Robert has the same interest in this matter as all other Class Members and his claims are typical of Class Members'.

121.    Common questions of law and fact exist as to the Class Members that predominate over any questions solely affecting the individual Class Members, including:

a.    Whether Huntington Crescent Club employed the Class Members within the meaning of the Labor Law;

b.    Whether Huntington Crescent Club misclassified the Class Members as independent contractors;

c.    Whether Huntington Crescent Club failed or refused to pay the Class Members the statutory minimum wage;

d.    Whether Huntington Crescent Club failed or refused to pay the Class Members overtime premium pay for all hours worked in excess of 40 hours per workweek;

e.    Whether Huntington Crescent Club failed or refused to pay the Class Members spread-of-hours pay;

f.    Whether Huntington Crescent Club willfully or recklessly violated the Labor Law;

g.    Whether Huntington Crescent Club is liable for all damages claimed hereunder, including interest, costs and disbursements and attorneys' fees; and

   h. Whether Huntington Crescent Club should be enjoined from such violations of the Labor Law in the future.

COLLECTIVE ACTION ALLEGATIONS

  122. Under 29 U.S.C. § 206, Plaintiff Robert seeks to assert these allegations and claims as a collective action on behalf of a defined group:

> All persons who work or have worked as Golf Caddies at Huntington Crescent Club at any time between December 11, 2020 and the entry of judgment in this case (the "Collective Action Members").

  123. Plaintiff Robert and the Collective Action Members are similarly situated on several legal and factual issues, including:

   a. Huntington Crescent Club employed the Collective Action Members within the meaning of the FLSA;

   b. Collective Action Members performed similar duties;

   c. Huntington Crescent Club failed to keep true and accurate time records for all hours Plaintiff Robert and the Collective Action Members worked;

   d. Huntington Crescent Club willfully or recklessly violated the FLSA;

   e. Huntington Crescent Club should be enjoined from such violations of the FLSA in the future; and

   f. The statute of limitations, for the putative collective action members who opt-in, should be estopped or equitably tolled due to Huntington Crescent Club's statutory violations.

## FIRST CAUSE OF ACTION
### FAILURE TO PAY THE OVERTIME PREMIUM PAY
### UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff Robert and the Class Action Members)

124.    Plaintiff Robert, on behalf of himself and the Class Members, repeat and reallege every allegation of the preceding paragraphs as if fully set forth herein.

125.    Huntington Crescent Club is an "employer" within the meaning of Labor Law §§ 190, 196-d, 651(5), 652 and supporting New York Statement Department of Labor Regulations and employed Plaintiff Robert and the Class Members.

126.    Plaintiff Robert and the Class Members are "employees" within the meaning of the Labor Law.

127.    Huntington Crescent Club misclassified the Golf Caddies as independent contractors when they should have been classified as employees.

128.    Huntington Crescent Club has more than 11 employees.

129.    The bag fees constitute tips under the Labor law.

130.    Neither the bag fees nor tips, above and beyond the bag fees, count towards Huntington Crescent Club's statutory obligation to pay its Golf Caddies overtime premium pay.

131.    Under the Labor Law and supporting New York Statement Department of Labor Regulations, Huntington Crescent Club is required to pay Plaintiff Robert and the Class Members 1.5 times their regular rate of pay for all hours they worked in excess of 40.

132.    Huntington Crescent Club failed to pay Plaintiff Robert and the Class Members overtime premium pay for any hour they worked above 40 in a week, violating the Labor Law. N.Y. Lab. Law § 650.

133. Huntington Crescent Club willfully violated Plaintiff Robert and the Class Members' rights by failing to pay them overtime compensation at rates not less than 1.5 times the regular rate of pay for each hour worked in excess of 40 hours in a workweek, violating the New York Labor Law and its regulations.

134. Huntington Crescent Club failed to pay the Class Members the overtime wages to which they were entitled, violating the Labor Law.

135. Assuming *arguendo* the bag fees do count towards its overtime obligations, Huntington Crescent Club would be required to pay its Golf Caddies 1.5 times the Caddies' effective hourly rate as overtime premium pay. Huntington Crescent Club did not, however, pay the Golf Caddies any overtime premium pay when they worked above 40 hours.

136. Huntington Crescent Club willfully violated the Labor Law by knowingly and intentionally failing to pay the Class Members overtime wages.

137. Pursuant to the Labor Law, Plaintiff Robert and the Class Members are entitled to recover from Huntington Crescent Club their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

SECOND CAUSE OF ACTION
FAILURE TO PAY MINIMUM WAGE
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff Robert and the Class Action Members)

138. Plaintiff Robert, on behalf of himself and the Class Members, repeat and reallege every allegation of the preceding paragraphs as if fully set forth herein.

139.     Under the Labor Law, Huntington Crescent Club was and is required to pay Plaintiff Robert and the Class Members the statutory minimum wage. N.Y. Lab. Law § 652.

140.     Neither the bag fees nor tips, which are paid above and beyond the bag fees, count towards Huntington Crescent Club's statutory obligation to pay its Golf Caddies minimum wage.

141.     Huntington Crescent Club failed to pay Plaintiff Robert and the Class Members the minimum wage, violating the Labor Law.

142.     Huntington Crescent Club willfully violated the Labor Law by knowingly and intentionally failing to pay Plaintiff Robert and Class Members the minimum wage.

143.     Pursuant to the Labor Law, Plaintiff Robert and the Class Members are entitled to recover from Huntington Crescent Club their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

<u>THIRD CAUSE OF ACTION</u>
FAILURE TO PAY SPREAD-OF-HOURS PAY
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff Robert and the Class Action Members)

144.     Plaintiff Robert, on behalf of himself and the Class Members, repeat and reallege every allegation of the preceding paragraphs as if fully set forth herein.

145.     Huntington Crescent Club willfully failed to pay Plaintiff Robert and the Class Members one additional hour at the minimum wage rate for each day they worked ten or more hours, violating 12 N.Y.C.R.R. § 146.-1.6.

146.     Due to Huntington Crescent Club's Labor Law violations, Plaintiff Robert and the Class Members are entitled to recover from Huntington Crescent Club their

unpaid spread-of-hours pay, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

FOURTH CAUSE OF ACTION
FAILURE TO PAY THE MINIMUM WAGE UNDER THE FLSA
(On Behalf of Plaintiff Robert and the Collective Action Members)

147.    Plaintiff Robert repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

148.    Huntington Crescent Club has been and continues to be, an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

149.    Huntington Crescent Club employed Plaintiff Robert and the Collective Action Members within the meaning of the FLSA.

150.    The bag fees constitute tips under the FLSA.

151.    Neither the bag fees nor tips, which are paid above and beyond the bag fees, count towards Huntington Crescent Club's statutory obligation to pay its Golf Caddies minimum wage.

152.    Huntington Crescent Club knowingly failed to pay Plaintiff Robert and the Collective Action Members the minimum wage.

153.    Huntington Crescent Club was required to pay Plaintiff Robert and the Collective Action Members the minimum wage rate for all hours worked.

154.    Because Huntington Crescent Club's FLSA violations were willful, a three-year statute of limitations applies under 29 U.S.C. § 255.

155.    As a result of Huntington Crescent Club's FLSA violations, Plaintiff Robert and the Collective Action Members have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensations under 29 U.S.C. § 216(b), and such other legal and equitable relief as this Court deems just and proper.

<u>FIFTH CAUSE OF ACTION</u>
FAILURE TO PAY OVERTIME UNDER THE FLSA
(On Behalf of Plaintiff Robert and the Collective Action Members)

156.    Plaintiff Robert repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

157.    Neither the bag fees nor tips, which are paid above and beyond the bag fees, count towards Huntington Crescent Club's statutory obligation to pay its Golf Caddies overtime premium pay.

158.    Huntington Crescent Club was required to pay Plaintiff Robert and the Collective Action Members no less than 1.5 times the regular rate at which they were employed for all hours worked in excess of 40 hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201, *et seq*., including 29 U.S.C. §§ 207(a)(1) and 215(a).

159.    At all relevant times, Huntington Crescent Club had a policy and practice of refusing to pay Plaintiff Robert and the Collective Action Members the proper overtime compensation for their hours worked in excess of 40 hours per workweek.

160.    Assuming *arguendo* the bag fees do count towards its overtime obligations, Huntington Crescent Club would be required to pay its Golf Caddies 1.5

times the Caddies' effective hourly rate as overtime premium pay. Huntington Crescent Club did not, however, pay the Golf Caddies any overtime premium pay when they worked above 40 hours.

161.    Huntington Crescent Club was aware or should have been aware that the practices described in this Complaint were unlawful, making its violations willful or reckless.

162.    Huntington Crescent Club has not made a good faith effort to comply with the FLSA with respect to Plaintiff Robert and the Collective Action Members' compensation.

163.    Huntington Crescent Club has failed to make, keep and preserve records with respect to its employees sufficient to determine the wages, hours, and other conditions and practices of employment, violating the FLSA, 29 U.S.C. §§ 201, 207(a)(1) and 215(a).

<u>SIXTH CAUSE OF ACTION</u>
RETALIATION UNDER THE NEW YORK LABOR LAW
(On behalf of Plaintiff)

164.    Plaintiff repeats every allegation of the preceding paragraphs as if set forth in this cause of action.

165.    Defendant was an employer within the meaning of N.Y. Lab. Law §§ 190, 196-d, 615(5), 652 and supporting New York State Department of Labor Regulations and employed Plaintiff.

166.    Plaintiff complained to Defendant about its unlawful wage practices of not paying him for all hours worked.

167.    An employer violates the Labor Law when not paying a non-exempt employee for all hours worked.

168.    Defendant terminated Plaintiff for his complaints about its wage practices, violating N.Y. Lab. § 215.

169.    No legitimate, non-retaliatory reasons exist for the adverse action Defendant took against Plaintiff.

170.    Defendant's actions against Plaintiff were willful, malicious and wanton.

171.    Defendant is liable to plaintiff for his loss of wages, liquidated damages, punitive damages, and attorneys' fees and expenses.

<u>SEVENTH CAUSE OF ACTION</u>
VIOLATION OF NEW YORK'S WHISTLEBLOWER LAW
(On behalf of Plaintiff)

172.    Plaintiff repeats every allegation of the preceding paragraphs as if set forth in this cause of action.

173.    Plaintiff complained about Defendant's practice of not providing him a copy of his licensing agreement and not being paid for all hours worked, which he reasonably believes violates a law, rule or regulation.

174.    Defendant terminated Plaintiff for his complaints about its wage practices, for not providing him a copy of his licensing agreement, and/or attempting to organize golf caddies in response to these unfair employment practices, violating N.Y. Lab. § 740.

175.    No legitimate, non-retaliatory reasons exist for the adverse action Defendant took against Plaintiff.

176.    Defendant's actions against Plaintiff were willful, malicious and wanton.

177.    Defendant is liable to Plaintiff for his loss of wages, liquidated damages, punitive damages, and attorneys' fees and expenses.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Robert respectfully requests this Court grant the following relief:

a.    Certifying this action as a class action under Fed. R. Civ. P. 23 on behalf of the Class Members and appointing Plaintiff Robert and Lipsky Lowe LLP to represent the Class Members;

b.    Designating this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice under 29 U.S.C. § 216(b) to all similarly situated members of an FLSA opt-in collective action, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue under 29 U.S.C. § 216(b) and appointing Plaintiff Robert and his counsel to represent the Collective Action Members and tolling of the statute of limitations between the period of filing of the Complaint to when notice is sent to them advising them of the collective action being conditionally certified;

c.    An award for unpaid overtime premium pay under the Labor Law and the FLSA;

d.    An award for unpaid minimum wage under the Labor Law and the FLSA;

e.    An award of liquidated damages as a result of Huntington Crescent Club's Labor Law violations;

f.    Equitably tolling the statute of limitations under the FLSA for the putative collective action members who opt-in;

g.    An award of pre-judgment and post-judgment interest;

h.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

i.    Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Robert demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
          December 11, 2024

<u>s/ Douglas B. Lipsky</u>
Douglas B. Lipsky
LIPSKY LOWE LLP
420 Lexington Avenue, Suite 1830
New York, New York 10170
Doug@lipskylowe.com
212.392.4772
*Attorneys for Plaintiff Robert and all similarly situated persons*

<u>CONSENT TO BECOME PARTY PLAINTIFF</u>

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Huntington Crescent Club to pay me the wages owed as required under the Fair Labor Standards Act and/or New York Labor Law and also authorize the filing of this consent in the action(s) challenging such conduct, and to preserve and pursue any claim that I may have to the greatest extent possible.  I expressly consent to the use of this consent form for purposes of making me a party plaintiff in any lawsuit and/or lawsuits that Lipsky Lowe LLP has brought and/or may bring on my behalf and other employees alleged to be similarly situated.


_____          12 / 06 / 2024
Signature                                                                    _____
                                                                                      Date


  Alain Robert

_____
Print Name

Doc ID: b77d54f0f8eecb37e5354db780364ccbd01abce8